No. 11-10298

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OLAF PETER JUDA,

Defendant-Appellant.
_____

**BRIEF FOR THE UNITED STATES AS APPELLEE**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
DISTRICT COURT NO. 91-CR-00324 WHA
_____

**BRIAN J. STRETCH**
Attorney of the United States
Acting under authority conferred by
28 U.S.C. § 515

**BARBARA J. VALLIERE**
Chief, Appellate Division
Assistant United States Attorney

**JENNY C. ELLICKSON**
Trial Attorney
U.S. Department of Justice
450 Golden Gate Ave, 11th Floor
San Francisco, CA 94102
(415) 436-6937

**Attorneys for Plaintiff-Appellee**
**UNITED STATES OF AMERICA**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………..iii

JURISDICTION, TIMELINESS, AND BAIL STATUS .........................................2

ISSUES PRESENTED ...................................................................................3

STATEMENT OF THE CASE ........................................................................3

STATEMENT OF THE FACTS ......................................................................5

    A.    The Offense Conduct..................................................................5

    B.    Guilty Plea & Judgment .............................................................6

    C.    The Direct Appeal .....................................................................6

    D.    Previous 2255 Motions...............................................................7

    E.    The Supervised Release Proceedings............................................9

SUMMARY OF ARGUMENT .......................................................................13

ARGUMENT ..............................................................................................14

    I.    THE DISTRICT COURT CORRECTLY DENIED JUDA'S
        PURPORTED MOTION TO DISMISS. ...................................14

        A.    Standard of review ............................................................14

        B.    Juda's self-styled motion to dismiss is actually an untimely and
            successive 2255 motion that the district court lacked jurisdiction
            to entertain...............................................................14

        C.    Jurisdictional challenges like Juda's are not exempt from the
            procedural requirements of Section 2255. ............................18

        D.    Juda's jurisdictional argument fails on the merits because his
            case satisfies the requirements of Article III. .......................21

i

II.   THE DISTRICT COURT PROPERLY MODIFIED JUDA'S
      CONDITIONS OF SUPERVISED RELEASE. ........................................25

     A.   Standard of review ...................................................25

     B.   The district court had authority under 18 U.S.C. § 3583(e)(2)
          to impose additional conditions of supervised release. ........................25

     C.   The district court properly exercised its discretion when it
          imposed new supervised release conditions. ........................................30

CONCLUSION ......................................................................33

STATEMENT OF RELATED CASES .................................................34

CERTIFICATE OF COMPLIANCE .......................................................36

CERTIFICATE OF SERVICE ..............................................................37

ADDENDUM ............................................................................38

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Clay v. United States*, 537 U.S. 522 (2003)............................................................15

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ......................................................15, 20

*Harrison v. Ollison*, 519 F.3d 952 (9th Cir. 2008) ....................................................18

*Henderson v. United States*, 2011 WL 1752199 (W.D. Mo. 2011)
    (unpublished)........................................................................................24

*Juda v. Andrews*, 2007 WL 951703 (E.D. Cal. 2007) (unpublished).....................17

*Juda v. United States*, 515 U.S. 1169 (1995)...........................................................15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................................22

*Matus-Leva v. United States*, 287 F.3d 758 (9th Cir. 2002)....................................15

*Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir. 2011).........................14

*Samson v. California*, 547 U.S. 843 (2006) ............................................................32

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) .................22, 23

*United States v. Begay*, 631 F.3d 1168 (10th Cir. 2011).........................................29

*United States v. Betts*, 511 F.3d 872 (9th Cir. 2007)...............................................32

*United States v. Blinkinsop*, 606 F.3d 1110 (9th Cir. 2010)....................................32

*United States v. Davies*, 380 F.3d 329 (8th Cir. 2004)............................................29

*United States v. Daniels*, 48 Fed. Appx. 409 (3d Cir. 2002) (unpublished)............24

*United States v. Gross*, 307 F.3d 1043 (9th Cir. 2002) .....................................26, 28

*United States v. Juda*, 46 F.3d 961 (9th Cir. 1995) .............................5, 7, 19, 21, 22

iii

*United States v. Juda*, 797 F. Supp. 774 (N.D. Cal. 1992)...................................6, 19

*United States v. Juda*, 2006 WL 249475 (N.D. Cal. 2006) (unpublished)...............8

*United States v. Juda*, 207 Fed. Appx. 757 (9th Cir. 2006)
(unpublished)..................................................................8, 17, 20

*United States v. Kennedy*, 643 F.3d 1251 (9th Cir. 2011).......................................32

*United States v. King*, 608 F.3d 1122 (9th Cir. 2010) ........................................25, 31

*United States v. Lewis*, 611 F.3d 1172 (9th Cir. 2010)...........................................22

*United States v. Lowenstein*, 108 F.3d 80 (6th Cir. 1997).......................................28

*United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997) .........................................27, 28

*United States v. Merold*, 2007 WL 1839441 (N.D. Fla. 2007) (unpublished) ........24

*United States v. Miller*, 205 F.3d 1098 (9th Cir. 2000)........................26, 27, 28, 31

*United States v. Monreal*, 301 F.3d 1127 (9th Cir. 2002) .......................................14

*United States v. Navarro-Espinosa*, 30 F.3d 1169 (9th Cir. 1994) .........................28

*United States v. Nixon*, 418 U.S. 683 (1974)...........................................................23

*United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005)...........................19

*United States v. Park Place Associates, Ltd.*, 563 F.3d 907 (9th Cir. 2009)...........22

*United States v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) .........................................24

*United States v. Romm*, 455 F.3d 990 (9th Cir. 2006).............................................22

*United States v. Schwartz*, 274 F.3d 1220 (9th Cir. 2001) ................................15, 16

*United States v. Siceloff*, 2010 WL 2486354 (W.D. Pa. 2010) (unpublished),
*aff'd by* 451 Fed. Appx. 183 (3d Cir. 2011) .............................................24

iv

*United States v. Trenter*, 201 F.3d 1262 (9th Cir. 2000) .........................................25

*United States v. Vargas-Amaya*, 389 F.3d 901 (9th Cir. 2004) ...............................19

*United States v. Washington*, 653 F.3d 1057 (9th Cir. 2011) ..........................*passim*

*United States v. Watson*, 582 F.3d 974 (9th Cir. 2009) ...........................................32

*United States v. Weber*, 451 F.3d 552 (9th Cir. 2006)..............................................31

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
    529 U.S. 765 (2000) ...................................................................................24

## FEDERAL STATUTES, RULES, AND GUIDELINES

U.S. Const. art. III, § 2 ...................................................................*passim*

18 U.S.C. § 81 ..............................................................................................4

18 U.S.C. § 111 ............................................................................................3

18 U.S.C. § 1114 ..........................................................................................3

18 U.S.C. § 3231 ..........................................................................................2

18 U.S.C. § 3553(a) ...................................................................................30

18 U.S.C. § 3583 ..............................................................................*passim*

18 U.S.C. § 3742 ..........................................................................................3

28 U.S.C. § 515 ..........................................................................................33

28 U.S.C. § 1291 ..........................................................................................3

28 U.S.C. § 2241 ........................................................................................17

28 U.S.C. § 2255 ..............................................................................*passim*

46 U.S.C. § 1903 ................................................................................3

Fed. R. App. P. 4(b) ..........................................................................2

Fed. R. Civ. P. 60(b) ..............................................................7, 8, 20

Fed. R. Crim. P. 32.1 ...................................................................... 31

U.S.S.G. § 5D1.3................................................................................32

**No. 11-10298**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

      v.

OLAF PETER JUDA,

   Defendant-Appellant.
_____

**BRIEF FOR THE UNITED STATES AS APPELLEE**
_____

In 1993, Defendant-Appellant Olaf Juda ("Juda") was sentenced to 262 months in prison and five years of supervised release for possessing and conspiring to possess a controlled substance on board a vessel with intent to distribute, and for arson on the high seas. In August 2010, Juda was released from prison and began serving his term of supervised release. Juda now appeals: (1) the district court's denial of his purported motion to dismiss supervised release revocation proceedings; and (2) the district court's subsequent modification of his conditions of supervised release. For the reasons set forth below, this Court should affirm both of the district court's orders.

## JURISDICTION, TIMELINESS, AND BAIL STATUS

The district court did not have jurisdiction to consider Juda's self-styled motion to dismiss supervised revocation proceedings. As discussed in more detail in Section I.B, Juda's motion was actually a successive and untimely collateral attack on his underlying conviction that failed to satisfy the requirements of 28 U.S.C. § 2255, and therefore the district court lacked jurisdiction to entertain it. *See United States v. Washington*, 653 F.3d 1057, 1065 (9th Cir. 2011). However, this Court may construe Juda's appeal as a motion for authorization to file a successive 2255 motion and therefore may consider whether to certify the motion pursuant to 28 U.S.C. § 2255(h). *See id.*

The district court had jurisdiction under 18 U.S.C. § 3231 and 18 U.S.C. § 3583(e)(2) to modify Juda's conditions of supervised release. The district court modified the conditions of Juda's supervised release at a hearing on June 7, 2011, and Juda filed a timely notice of appeal of the order on June 7, 2011. CR 674, 677; SER 70, 192-94.[1] *See* Fed. R. App. P. 4(b). This Court has jurisdiction to review

---

[1] "SER" refers to the government's Supplemental Excerpts of Record, and "AOB" refers to Appellant's Opening Brief. "CR" refers to the Clerk's Record, which is referenced by docket number and is available at SER 199-241. On July 5, 2012, the Office of the Clerk issued an order stating that Juda's Excerpts of Record ("ER") could not be filed because they lacked, among other things, an index and the district court docket sheet. For the convenience of the Court, the government has reproduced the ER as Volume I of its own SER, with an accompanying index. The page numbering for this portion of the SER is identical to the page numbering of the ER, so that ER 2 is now SER 2, and so on.

Juda's challenge to the district court's modification of his conditions of supervised release pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. Juda is serving a five-year term of supervised release that is scheduled to end in August 2015. *See* SER 1.

## ISSUES PRESENTED

I.     Whether the district court properly denied Juda's self-styled motion to dismiss supervised release proceedings, where the basis for Juda's motion was his claim that the district court lacked Article III jurisdiction over this case since its inception.

II.     Whether the district court acted within its authority and discretion when it added conditions to Juda's supervised release after learning that Juda's original judgment did not set forth any conditions.

## STATEMENT OF THE CASE

On July 8, 1992, the United States Attorney's Office in San Francisco, California, filed a superseding indictment charging Juda and several co-defendants with possession of a controlled substance on board a vessel with intent to distribute, in violation of 46 U.S.C § 1903(a) (Count One); conspiracy to possess a controlled substance on board a vessel with intent to distribute, in violation of 46 U.S.C. § 1903(j) (Count Two); assaulting a federal officer, in violation of 18 U.S.C. §§ 111 and 1114 (Count Three); and arson on the high seas, in violation of

3

18 U.S.C. § 81 (Count Four). CR 127. On January 14, 1993, Juda pleaded guilty to Counts One, Two, and Four of the superseding indictment. CR 184. On July 13, 1993, the district court entered a judgment sentencing Juda to 262 months in prison, to be followed by a five-year term of supervised release. CR 261; SER 63-66.

On August 13, 2010, after completing his prison term, Juda began serving his term of supervised release. SER 1- 3. On October 21, 2010, Juda's probation officer filed a Probation Form 12 with the district court, charging Juda with violating his conditions of supervised release by leaving the district without permission and failing to report to the probation officer as required. CR 644; SER 1-4. The district court ultimately found that the government had not proved that Juda had violated his conditions of release because the conditions that Juda allegedly violated had not been placed on the record. CR 674; SER 67, 191-92. The district court then modified Juda's conditions of supervised release to include several conditions, including the ones that Juda had been charged with violating, and memorialized those conditions in an order dated June 9, 2011. CR 674, 675; SER 67-69, 192-94.

## STATEMENT OF THE FACTS

### A.     The Offense Conduct

In February 1991, Juda and one of his co-defendants sailed a vessel named "Malekula" to Singapore, where several other co-defendants boarded the ship. *United States v. Juda*, 46 F.3d 961, 964-65 (9th Cir. 1995) ("*Juda II*") (available at SER 121).  The Malekula then met with a supply vessel on the high seas and loaded sixteen tons of hashish.  *Id.* at 965 (available at SER 121).  In the early morning hours of July 16, 1991, a Coast Guard vessel intercepted the Malekula on the high seas, approximately 530 miles west of Vancouver, British Columbia.  *Id.* The Coast Guard boat established radio contact with the Malekula, and Juda identified himself as the Malekula's master.  *Id.*

The Coast Guard vessel identified itself as the United States Coast Guard and informed the Malekula that a small boat was approaching to ask further questions.  *Id.*  Juda threatened to shoot if the boat came any closer, and the larger Coast Guard vessel promptly ordered the small boat to return.  *Id.*  Moments later, one of Juda's co-defendants, instituting a plan agreed to by Juda and the other defendants, ignited fuel, and the Malekula exploded and caught fire.  *Id.*  After abandoning ship, Juda and his co-defendants were rescued by the Coast Guard vessel, arrested, transported to San Francisco, and ultimately charged.  *Id.* (available at SER 121-22).

5

### B.     Guilty Plea & Judgment

On January 14, 1993, Juda pleaded guilty to Counts One, Two, and Four of the superseding indictment. CR 184. At a hearing on July 2, 1993, United States District Judge Charles A. Legge sentenced Juda to 262 months in prison, to be followed by five years of supervised release. CR 260; SER 94. On July 13, 1992, the district court entered its judgment, which stated: "While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page)." SER 65; *see also* CR 261. However, the following page of the judgment did not set forth any conditions of supervised release. *See* SER 66.

### C.     The Direct Appeal

In 1991, before entering their guilty pleas, Juda and his co-defendants filed a motion to dismiss the original indictment in the case for lack of jurisdiction. CR 98. In particular, Juda and his co-defendants argued that it was a violation of due process for the United States to prosecute them because there was an insufficient nexus between their activities and the United States. *See United States v. Juda*, 797 F. Supp. 774, 777 (N.D. Cal. 1992) ("*Juda I*") (available at SER 104). The district court granted the motion dismiss as to one of Juda's co-defendants, who was not a citizen of the United States or a resident alien, but denied the motion as to Juda and the other remaining co-defendants. *See id.* at 779-80 (available at SER

6

107-08). After sentencing, Juda and four of his co-defendants appealed the district court's denial of their motion to dismiss the indictment for lack of jurisdiction. *See Juda II*, 46 F.3d at 964 (available at SER 120). This Court affirmed the district court, holding that "there is no statutory or constitutional bar to exercising jurisdiction over these five defendants." *Id.*

### D. Previous 2255 Motions

Following this Court's denial of his direct appeal, Juda filed at least six 2255 motions in this case, all of which were dismissed or denied. SER 179; *see also* CR 382, 420, 443, 464, 469, 512, 586, 599, 616, 619, 623. As discussed in more detail below, at least two of these motions argued that the district court lacked jurisdiction over Juda's case under Article III of the United States Constitution.

First, on August 17, 2005, Juda filed a motion, purportedly pursuant to Federal Rule of Civil Procedure 60(b)(4), in which he argued that the district court "does not have subject matter jurisdiction over this criminal case" under Article III. SER 139; *see also* CR 586, SER 139-56. Shortly after Juda filed this motion, his case was reassigned to United States District Judge William H. Alsup, who denied Juda's motion on the ground that it was a successive 2255 motion that this Court had not authorized. CR 587, 599; SER 157-60. However, the district court granted Juda a certificate of appealability on the ground that a reasonable jurist could have held that, in this particular case, Juda's motion was indeed a Rule

7

60(b)(4) motion. *United States v. Juda*, 2006 WL 249475, at *1 (N.D. Cal. 2006)
(unpublished) ("*Juda III*") (available at SER 161).

Juda appealed the district court's decision, and on November 14, 2006, this
Court affirmed in a memorandum disposition. *United States v. Juda*, 207 Fed.
Appx. 757 (9th Cir. 2006) (unpublished) ("*Juda IV*") (available at SER 163-64).
In particular, the Court held that "because Juda's Rule 60(b) motion seeks to
relitigate issues on the merits, we conclude that the district court properly treated
his motion as a second or successive § 2255 motion." *Id.* at 757-58 (available at
SER 164). Juda filed a self-styled motion for reconsideration with this Court,
arguing that the Court had "misread the record to give the appearance that the
60(b) Motion sought to relitigate a settled jurisdictional question." SER 165.
According to Juda, "[n]owhere does the record have any reference about an Article
III jurisdictional challenge," and therefore the Court was "plainly wrong" to
conclude that "Juda was relitigating an already settled jurisdictional issue." SER
166. This Court construed Juda's motion as a petition for rehearing and denied it.
CR 622.

Second, Juda filed another motion in the district court, dated November 29,
2006, in which he asked the court to permanently enjoin "any and all United States
Probation Officers, or any other agent with the capacity to conduct supervised
release, from conducting such supervised release upon Defendant." SER 168; *see*

8

*also* CR 616.  In his memorandum in support of the motion, Juda incorporated by reference his earlier claims that the district court lacked Article III subject-matter jurisdiction over this prosecution.  SER 168-70.  Approximately two weeks later, Juda amended this motion and supporting memorandum by expanding his earlier Article III arguments and adding a new argument based on the absence of supervised release conditions in the written judgment in this case.  SER 171-78; *see also* CR 619.  The amended memorandum further stated:  "Because there is a great likelihood of an altercation between Juda and an uninformed probation officer, this Motion should be granted and prevent the occurrence of such an event."  SER 172.  The district court denied the motion, describing it as "nothing more than *another* successive motion under 28 U.S.C. 2255" that "adds nothing new to the arguments [Juda] has made previously to this Court."  SER 179 (emphasis in original).

### E.  The Supervised Release Proceedings

On August 13, 2010, Juda was released from custody and immediately traveled to San Diego to live with his sister.  SER 2.  Juda did not obtain permission from the United States Probation Office in the Northern District of California before traveling, and Probation Officer Bobby H. Love, Jr., admonished him for not reporting to the office within 72 hours of his release from custody.  SER 2.  However, Juda was granted permission to live in the Southern District of

9

California for 60 days pending an investigation of his travel request. SER 2. On

September 23, 2010, Juda informed Probation Officer Love that he had found

gainful employment in Cabo San Lucas, Mexico, and Probation Officer Love told

Juda that he must get various permissions before traveling to any country. SER 2.

On October 9, 2010, Juda sent a letter to Probation Officer Love that began

by stating: "This is to inform you that I will NOT apply myself to the

discretionary components of Supervised Release. I am therefore in violation and

that requires you to set a time and date for a revocation hearing with Judge Alsup."

SER 5. The letter further stated:

> After talking to you on the evening of October 8, I realize
> that this matter of supervised release will be an endless
> and petty hassle that I simply cannot tolerate. I had
> promised myself while in prison that I would fight my
> case again once released, but upon release I decided to
> give this matter a chance. I realize now that compliance
> is impossible. I do not need supervision to put my life
> back together. I will put an end to this business.

SER 5. On October 21, 2010, Probation Officer Love filed a Form 12 petition in

the district court that charged Juda with violating his conditions of supervised

release by leaving the district without permission and by failing to report to his

probation officer. CR 644; SER 1-4. The petition described Juda's conduct since

his release from prison and also noted that Juda was required to submit monthly

supervision reports to his probation officer but had failed to do so for the months of

August and September. SER 3. Upon reviewing the petition, the district court

10

found probable cause to believe that Juda had violated his conditions of supervised release.  SER 4.

On October 29, 2010, Juda, acting *pro se*, filed a self-styled motion to dismiss the supervised release revocation proceedings, arguing that the supervised release revocation proceedings must be dismissed because his prosecution was invalid from its inception for lack of Article III subject-matter jurisdiction.[2]  CR 645; SER 7-29.  On April 27, 2011, the district court concluded that the motion was "a reassertion of defendant's long-held position that this Court lacks jurisdiction over this case" and denied it on two grounds.  SER 37; *see also* CR 668.  First, the district court held that Juda's motion was procedurally improper because it was untimely, presented an argument that Juda should have raised on direct appeal, and constituted a "successive collateral attack" under 28 U.S.C. § 2255 for which Juda had not sought certification.  SER 37.  Second, the district court held that Juda's Article III arguments lacked merit and "were properly rejected in the context of analysis of statutory jurisdiction and due process by the court of appeals during defendant's appeal."  SER 38; *see also* SER 37.

---

[2]  The district court later appointed counsel to represent Juda in connection with these proceedings. *See* CR 648, 649.

11

At a hearing on June 7, 2011, the district court found that the government had not proved that Juda violated his conditions of supervised release because Judge Legge had not placed any conditions of supervised release on the record. SER 191. However, the district court explained that its finding of no supervised-release violation was based "on a technicality only" and opined that Juda "knew good and well that there were additional conditions and somebody must have clued him in on what they were." SER 191. The district court further stated: "I'm not saying that there wasn't a violation. Please don't misquote me later. I'm just saying a violation hasn't been proven." SER 192. Instead, because there was "a gap in the evidence as to what the conditions were," Juda was "off of that hook." SER 192.

The district court then officially added the following conditions to Juda's term of supervised release, which the court later memorialized in an order dated June 9, 2012: (1) Juda shall report as directed to the United States Probation Office in the district to which he is released and shall submit reports as directed by the United States Probation Office; (2) Juda shall submit to searches at any time; (3) Juda shall not own or possess any firearms, ammunition, destructive devices, or other dangerous weapons; and (4) Juda shall notify the probation officer at least ten days before any change of residence or employment. SER 67-69, 192-93. When reciting these conditions at the hearing, the district court explained that it was

12

saying "what Judge Legge should have said back then" and described the
conditions as "the – now the expressly-stated conditions."  SER 192, 194.  Juda
filed his notice of appeal later that day.  CR 677; SER 70.

## SUMMARY OF ARGUMENT

The district court correctly denied Juda's purported motion to dismiss
supervised release revocation proceedings and appropriately modified the
conditions of Juda's supervised release.  Juda's self-styled motion to dismiss
sought to challenge the district court's Article III jurisdiction over this prosecution
from its inception, and therefore the district court properly concluded that it was, in
substance, a 2255 motion.  Because this motion was untimely and failed to satisfy
the requirements of 28 U.S.C. § 2255(h), the district court lacked jurisdiction to
entertain it.  Furthermore, even if the motion were procedurally proper, Juda's
jurisdictional challenge fails on the merits because, as this Court already held on
direct appeal, there is no constitutional bar to exercising jurisdiction over Juda in
this case.  Accordingly, this Court should affirm the district court's denial of Juda's
purported motion to dismiss.

This Court should also affirm the district court's decision to impose
additional conditions on Juda's term of supervised release.  The district court had
the authority to modify Juda's supervised release conditions pursuant to 18 U.S.C.
§ 3583(e)(2) because Juda's term of supervised release is ongoing.  Section

13

3583(e)(2) does not limit the district court's authority to situations involving "changed circumstances," but in any event, Juda's case involved changed circumstances that did not exist at the time of his sentencing. The district court also acted within its discretion when it imposed four additional conditions of supervised release that have either been codified in the Sentencing Guidelines or upheld by this Court, based on Supreme Court precedent.

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DENIED JUDA'S PURPORTED MOTION TO DISMISS.

### A. Standard of review

Whether a district court has jurisdiction to rule on a motion is a question of law reviewed de novo. *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002). The district court's denial of a 28 U.S.C. § 2255 motion is also reviewed de novo. *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1187 (9th Cir. 2011).

### B. Juda's self-styled motion to dismiss is actually an untimely and successive 2255 motion that the district court lacked jurisdiction to entertain.

Juda first appeals the district court's denial of his self-styled "Motion to Dismiss Government's Application to Revoke Supervised Release," arguing that the district court should have dismissed the supervised release revocation proceedings because "the court lacked Article III subject-matter jurisdiction from the outset of this case." AOB 10; *see also* CR 645. In other words, Juda's

14

purported motion to dismiss is actually a collateral attack on the constitutional

validity of Juda's underlying conviction and sentence. Because Juda's motion

therefore presents "an asserted federal basis for relief from a . . . judgment of

conviction," it is, in substance, a new request for relief on the merits and should be

treated as a motion for relief under 28 U.S.C. § 2255.[3] *Washington*, 653 F.3d at

1063 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005)). As the district court

recognized, however, this motion fails to comply with the procedural requirements

of Section 2255, *see* SER 37, and therefore the district court lacked jurisdiction to

rule on the motion.

To begin with, Juda's 2255 motion is untimely. When Juda's conviction

became final in 1995, there was no limit on the time within which he could file a

motion under Section 2255.[4] *See United States v. Schwartz*, 274 F.3d 1220, 1222

(9th Cir. 2001). Starting the following year, however, the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") required federal prisoners to

---

[3] Because Juda is still subject to supervised release, he remains "in custody" for
purposes of 28 U.S.C. § 2255 and therefore is covered by this provision. *See, e.g.*,
*Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002) (explaining that a
person who is still subject to supervised release is in custody and therefore may
seek relief pursuant to 28 U.S.C. § 2255).

[4] Juda's conviction became final on June 26, 1995, when the United States
Supreme Court denied Juda's petition for a writ of certiorari. *See Juda v. United
States*, 515 U.S. 1169 (1995) (denying Juda's petition); *see also Clay v. United
States*, 537 U.S. 522, 527 (2003) (explaining that a judgment becomes final when
the Supreme Court denies a petition for a writ of certiorari).

15

bring collateral attacks under 28 U.S.C. § 2255 within one year of the date their convictions became final. *Id.* Like all defendants whose convictions became final before AEDPA's enactment, Juda was entitled to a one-year grace period after AEDPA's effective date to file a 2255 motion. *See id.* That grace period expired on April 26, 1997, *see id.*, more than thirteen years before Juda filed the 2255 motion at issue here. Furthermore, there are no circumstances, such as new Supreme Court law or newly discovered evidence, that might justify the filing of a motion after the expiration of this grace period. *See* 28 U.S.C. § 2255(f). Accordingly, the district court correctly rejected Juda's motion as untimely.

Juda's motion also fails to comply with Section 2255 because it is a successive collateral attack that this Court did not authorize. Juda has already filed at least six other 2255 motions in this case, all of which were dismissed or denied. SER 179; *see also* CR 382, 420, 443, 464, 469, 512, 586, 599, 616, 619, 623. However, a prisoner is generally limited to one 2255 motion and may not bring a "second or successive motion" unless the motion satisfies "the exacting standards" of 28 U.S.C. § 2255(h).[5] *Washington*, 653 F.3d at 1059. Under this provision, a successive 2255 motion cannot be considered unless this Court first certifies that the motion contains either "(1) newly discovered evidence that, if proven and

---

[5] Because this standard is difficult to meet, "petitioners often attempt to characterize their motions in a way that will avoid the strictures of § 2255(h)," as Juda has done here. *Washington*, 653 F.3d at 1059.

16

viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or "(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.* (quoting 28 U.S.C. § 2255(h)).

This Court has not certified Juda's motion pursuant to Section 2255(h), and even if the Court construes this appeal as a request for such certification, the motion does not satisfy the requirements of 2255(h). Juda's motion is not based on "a new rule of constitutional law," nor does it contain any newly discovered evidence. 28 U.S.C. § 2255(h). Instead, Juda's motion merely repeats the same Article III jurisdictional arguments that Juda already made in 2005 and 2006 in earlier 2255 motions.[6] *See* SER 139-56, 173-75. Furthermore, when Juda appealed the district court's denial of the 2005 motion and asked this Court to construe his appeal as a request for authorization to file a successive 2255 motion, this Court declined to certify the motion because Juda had not made a prima facie showing that satisfied the requirements of Section 2255(h). *See Juda IV*, 207 Fed. Appx. at 757 (available at SER 164). Nothing has changed. Accordingly, this

---

[6]   Juda also raised the same Article III jurisdictional arguments in a 2006 petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the Eastern District of California. *See Juda v. Andrews*, 2007 WL 951703, at *1 (E.D. Cal. 2007) (unpublished) ("Finally, Petition claims that the United States' claim of jurisdiction through the nationality of a person is insufficient for the United States to become the complaining party under Article III, § 2 of the Constitution.").

17

Court should decline to certify Juda's untimely and successive 2255 motion and should affirm the district court's denial of this motion.

### C. Jurisdictional challenges like Juda's are not exempt from the procedural requirements of Section 2255.

Juda argues that his purported motion to dismiss is exempt from the stringent requirements of Section 2255 because the motion seeks to challenge the district court's subject-matter jurisdiction. *See* AOB 10-13. Juda is mistaken. "As a general rule, § 2255 provides the exclusive procedural mechanism by which a federal prisoner may test the legality of detention." *Washington*, 653 F.3d at 1059 (quoting *Harrison v. Ollison*, 519 F.3d 952, 955 (9th Cir. 2008)). Indeed, Section 2255 expressly applies when a prisoner asks the sentencing court to vacate or set aside his sentence "upon the ground that the sentence was imposed in violation of the Constitution . . . , or that the court was without jurisdiction to impose such sentence." 28 U.S.C. § 2255(a). Furthermore, Section 2255 does not exclude jurisdictional claims from its bars on untimely or uncertified successive motions. *See* 28 U.S.C. § 2255(f), (h). Nor has this Court held that a defendant may launch successive collateral attacks on the jurisdictional validity of his underlying conviction and sentence without complying with the requirements of Section

18

2255.[7]  In short, Juda's 2255 motion is not exempt from the procedural

requirements of Section 2255 simply because it attempts to raise a challenge to

jurisdiction.

There is also no merit to Juda's suggestion that the district court should have

entertained his purported motion to dismiss because the court had an obligation to

determine whether it had jurisdiction to hear his case in the first place.  *See* AOB

11-13.  The district court already determined that it had jurisdiction in this case

more than twenty years ago, when it denied Juda's pretrial motion to dismiss the

original indictment in this case for lack of jurisdiction.  *See Juda I*, 797 F. Supp. at

779-80 (available at SER 107-08).  This Court affirmed that jurisdictional decision,

holding that "there is no statutory or constitutional bar to exercising jurisdiction

over [Juda]."  *Juda II*, 46 F.3d at 964 (available at SER 120).  Juda cannot now

attack this prior jurisdictional holding without complying with the requirements of

Section 2255, which he has not done.  *See Washington*, 653 F.3d at 1063

(explaining that "a motion that 'attacks the federal court's previous resolution of a

---

[7]  Juda cites two of this Court's decisions to support his claim that "[i]t is well
established that a defendant can directly challenge a court's jurisdiction to hold a
revocation hearing during the proceedings."  AOB 10.  However, neither case
supports the proposition that a defendant may use revocation proceedings to
collaterally attack the validity of the underlying conviction and sentence on
jurisdictional grounds.  *See United States v. Ortiz-Hernandez*, 427 F.3d 567, 579-
80 (9th Cir. 2005) (concluding that warrant that was not based on sworn facts was
insufficient to extend district court's jurisdiction to revoke supervised release
beyond the terms of supervision); *United States v. Vargas-Amaya*, 389 F.3d 901,
907 (9th Cir. 2004) (same).

19

claim on the merits'" is "'in substance a successive habeas petition and should be treated accordingly'" (quoting *Gonzalez*, 545 U.S. at 531, 532)).

Juda argues that, notwithstanding the requirements of Section 2255, the Supreme Court's decision in *Gonzalez* establishes his right to make a "late jurisdictional challenge" that the district court is required to entertain. AOB 12. However, *Gonzalez* does not stand for that proposition. Rather, *Gonzalez* simply holds that "a Rule 60(b)(6) motion in a § 2254 case is not to be treated as a successive habeas petition if it does not assert, or reassert, claims of error in the movant's state conviction." 545 U.S. at 538. In fact, *Gonzalez* suggests that a Rule 60(b) motion *should* be treated like a habeas petition when the motion "substantively addresses federal grounds for setting aside the movant's state conviction." [8] *Id.* at 533. In short, *Gonzalez* does not support Juda's claim that, regardless of the requirements of Section 2255, the district court must entertain the merits of Juda's jurisdictional arguments whenever Juda finds some excuse for raising them.

---

[8] Although *Gonzalez* does note that a habeas petitioner can use a Rule 60(b) motion "to obtain vacatur of a judgment that is void for lack of subject-matter jurisdiction," 545 U.S. at 534, Juda has not filed a Rule 60(b) motion here. Furthermore, Juda previously filed a purported Rule 60(b) motion that raised the same jurisdictional arguments he makes now, and this Court cited *Gonzalez* as support for its holding that the motion should be treated as a successive and unauthorized 2255 motion. *See Juda IV*, 207 Fed. Appx. at 757-58 (available at SER 164).

20

For all of these reasons, the district correctly concluded that Juda's purported motion to dismiss was actually a successive 2255 motion that does not satisfy the requirements of Section 2255. *See* SER 37. Accordingly, this Court should affirm the district court's order denying Juda's motion to dismiss the supervised release revocation proceedings.

### D. Juda's jurisdictional argument fails on the merits because his case satisfies the requirements of Article III.

Even if Juda's purported motion to dismiss were not an untimely and improper successive 2255 motion, the district court should still have denied the motion because Juda's jurisdictional argument lacks merit. To begin with, this Court already concluded in *Juda II* that "there is no statutory or constitutional bar to exercising jurisdiction over [Juda]" in this case. 46 F.3d at 964 (available at SER 120). This Court could not have reached such a holding without implicitly deciding what Juda now disputes: that exercising jurisdiction over Juda is consistent with the requirements of Article III. *Juda II* is therefore law of the case as to Juda's current jurisdictional argument and should continue to govern.[9] *See*

---

[9] Juda may argue, as he has done before, that *Juda II* and other previous decisions do not resolve his Article III jurisdictional arguments because he did not specifically rely on Article III until 2005. *See, e.g.*, SER 166. As the district court noted, however, Juda's current 2255 motion simply "tries to cloak his old arguments in new Article III clothes," insofar as Juda is reasserting "his nexus arguments that were previously made in the context of his purportedly different challenges before the court of appeals." SER 37-38.

21

*United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 925 (9th Cir. 2009) (explaining that a prior ruling becomes law of the case as to a particular issue when that issue "must have been decided explicitly or by necessary implication in the previous disposition"). Accordingly, this Court should continue to follow its decision in *Juda II* because that decision is neither clearly erroneous nor undermined by intervening controlling authority or substantially different evidence. *See United States v. Lewis*, 611 F.3d 1172, 1178-79 (9th Cir. 2010) (explaining law-of-the-case doctrine).

In any event, even if this Court chooses to revisit the substance of its prior jurisdictional decision in this case, the district court was correct to conclude that Juda's Article III arguments lack merit. *See* SER 37-38. On appeal, Juda suggests that his criminal case was invalid from its inception because it does not amount to an Article III case or controversy, but he does not explain this argument in detail, nor does he cite any law to support it. *See* AOB 8-9, 13-14. As the district court noted, however, Juda's Article III argument below relied on principles from civil cases concerning the case-or-controversy requirement, such as *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).[10] *See* SER 14-16, 37. These cases explain that a plaintiff has

---

[10] To the extent that Juda made arguments in the district court that he did not include in his opening brief, he has waived those arguments. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("[A]rguments not raised by a party in its

22

standing to sue only if she can establish that the defendant's conduct caused her an

"injury in fact" that could likely be redressed by the relief sought in the lawsuit.

*See, e.g.*, *Steel Co.*, 523 U.S. at 103-04. In his district court briefing, Juda argued

that the government had not met these standing requirements in this prosecution

because the government had failed to establish that the conduct charged in the

indictment had caused an injury to the United States. *See* SER 16-17, 20-21, 24-

25.

Juda's argument, though creative, is misguided. As sovereign, the United

States has the power to prosecute violations of valid criminal statutes, and these

prosecutions are within the traditional scope of Article III power. *See United*

*States v. Nixon*, 418 U.S. 683, 694 (1974) (explaining that a criminal prosecution

"is a judicial proceeding in a federal court alleging violation of federal laws and is

brought in the name of the United States as sovereign"); *id.* at 697 ("[S]ince the

matter is one arising in the regular course of a federal criminal prosecution, it is

within the traditional scope of Art. III power."). Furthermore, when someone

violates federal law, the United States suffers an "injury to its sovereignty arising

from violation of its laws," and that injury "suffices to support a criminal lawsuit

opening brief are deemed waived."). However, because Juda included his district
court briefing in his Excerpts of Record, *see* SER 7-29, and therefore might argue
that he intended to adopt those arguments on appeal, the government briefly
addresses the Article III arguments that Juda made before the district court.

by the government." *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000); *see also United States v. Ratigan*, 351 F.3d 957, 963 (9th Cir. 2003) ("After an offense of the laws of the United States was set forth and returned in the indictment, the district court had jurisdiction of . . . the subject matter . . . .").

Accordingly, numerous courts have rejected Article III arguments like Juda's, where criminal defendants and prisoners claimed that the government lacked standing to prosecute them because their crimes did not inflict a concrete injury on the United States. *See, e.g.*, *United States v. Daniels*, 48 Fed. Appx. 409, 418 (3d Cir. 2002) (unpublished) (describing defendant's standing argument as "frivolous" because the United States, as sovereign, "has standing to prosecute violations of valid criminal statutes"); *Henderson v. United States*, 2011 WL 1752199, at *6 (W.D. Mo. 2011) (unpublished) (same); *United States v. Siceloff*, 2010 WL 2486354, at *1 (W.D. Pa. 2010) (unpublished) ("The government has the statutory authority to prosecute violations of federal criminal law and this court has both constitutional and statutory jurisdiction over this criminal prosecution. No other evidence of 'standing' is required."), *aff'd by* 451 Fed. Appx. 183 (3d Cir. 2011) (unpublished); *United States v. Merold*, 2007 WL 1839441, at *14 (N.D. Fla. 2007) (unpublished) (describing defendant's standing argument as "patently frivolous" because "[d]efendant was accused of violating the criminal laws of the

24

United States, the United States Attorney is charged with prosecuting alleged violators, and nothing more need be added").

For all of these reasons, the district court properly denied Juda's purported motion to dismiss the supervised release revocation proceedings, and the Court should affirm the district court's decision.

## II. THE DISTRICT COURT PROPERLY MODIFIED JUDA'S CONDITIONS OF SUPERVISED RELEASE.

### A. Standard of review

Whether a district court has authority under 18 U.S.C. § 3583(e) to modify a defendant's conditions of supervised release is a question of law that this Court reviews de novo. *See United States v. Trenter*, 201 F.3d 1262, 1263 (9th Cir. 2000) (reviewing de novo whether district court had authority under 18 U.S.C. § 3583(e) to reinstate defendant's original term of supervised release). This Court reviews a district court's imposition of supervised release conditions for abuse of discretion. *See United States v. King*, 608 F.3d 1122, 1130 (9th Cir. 2010).

### B. The district court had authority under 18 U.S.C. § 3583(e)(2) to impose additional conditions of supervised release.

The district court had authority to impose additional conditions of supervised release pursuant to the procedures set forth in 18 U.S.C. § 3583(e)(2). Under this provision, the district court could lawfully modify or enlarge Juda's conditions upon consideration of certain statutorily enumerated factors, including

the nature and circumstances of the offense, the need for deterrence, the need to protect the public, and the relevant provisions of the Sentencing Guidelines. *See United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002); 18 U.S.C. § 3583(e)(2) (authorizing courts to modify or enlarge conditions of supervised release after considering certain factors set forth in 18 U.S.C. § 3553(a)). The district court acted in accordance with the requirements of Section 3582(e)(2) in this case, and therefore it acted within its authority when it imposed the additional conditions that Juda now challenges.

To the extent that Juda suggests that the district court lacked authority to modify his supervised release because "nearly 20 years" have elapsed since his 1993 sentencing, Juda is mistaken. AOB 16. Pursuant to Section 3583(e)(2), a district court may modify or enlarge the conditions of supervised release "at any time prior to the expiration or termination of the term of supervised release," as long as the court complies with the other requirements of Section 3583(e)(2). 18 U.S.C. § 3583(e)(2). Juda's term of supervised release is ongoing, and therefore the district court was not time-barred from adding new conditions to Juda's supervised release. *Cf. United States v. Miller*, 205 F.3d 1098, 1099-01 (9th Cir. 2000) (upholding district court's authority to modify condition of release for defendant who had already been released from prison and was serving term of supervised release).

Section 3583(e)(2) also does not limit the district court's modification authority to situations involving "changed circumstances," as Juda claims. *See* AOB 16-18. Indeed, this subsection specifically instructs courts to consider factors that are unrelated to changed circumstances, such as the applicable Sentencing Guidelines in effect on the date of sentencing, before modifying conditions of supervised release. *See* 18 U.S.C. § 3583(e)(2) (directing courts to consider the factors set forth in 18 U.S.C. § 3553(a)(4) before modifying or enlarging conditions of supervised release).

Nor has this Court required "a change in the circumstances surrounding a defendant's supervised release" before a district court may modify supervised-release conditions. AOB 17. To support his contrary argument, Juda relies heavily on *Miller*, in which this Court quoted the Second Circuit's observation that "[s]ection 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release . . . in order to account for new or unforeseen circumstances." 205 F.3d at 1101 (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)); *see also* AOB 17-18. However, this statement does not amount to a holding that changed circumstances are the *exclusive* basis for modifying supervised release under Section 3583(e)(2); it simply explains that changed circumstances are a *possible* basis for modification. Indeed, after invoking this Second Circuit passage, the Court went on to note that

27

"the first clause of § 3583(e) obligates courts to consider a litany of factors, incorporated by reference, that are germane to the modification of supervised release."[11] *Miller*, 205 F.3d at 1101; *see also Gross*, 307 F.3d at 1044 (citing *Miller* but also noting that the district court had "broad authority" to modify the defendant's conditions upon considering the factors referred to in Section 3582(e)(2) and specified in Section 3553(a)).

In fact, in at least one case, this Court has affirmed a district court's authority under Section 3583(e)(2) to impose conditions of release when there were no changed circumstances. *See United States v. Navarro-Espinosa*, 30 F.3d 1169, 1170-71 (9th Cir. 1994) (holding that Section 3583(e)(2) authorized district court to add conditions of release to correct sentence after the court inadvertently neglected to mention the conditions during the sentencing hearing). Furthermore, at least two circuits have specifically held that "[a] district court may modify the conditions imposed on a term of supervised release even when . . . the modification

---

[11] The out-of-circuit cases on which Juda relies also recognize that changed circumstances are not the only possible basis for modifying conditions of supervised release. *See Lussier*, 104 F.3d at 36 (cited by AOB 18) (concluding that district court did not have authority to modify restitution order under Section 3583(e)(2) because the defendant's challenge to the order did not involve "changed circumstances *or affect in any way general punishment aims* such as deterrence, rehabilitation, and proportionality" (emphasis added)); *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997) (cited by AOB 18) ("So long as the modifications meet the standard required of initial terms of supervised release, i.e., that they are reasonably related to the goals of rehabilitation of the defendant and the protection of the public, . . . they will be upheld.").

is based only on evidence that was available at the original sentencing." *United States v. Davies*, 380 F.3d 329, 332 (8th Cir. 2004); *United States v. Begay*, 631 F.3d 1168, 1172 (10th Cir. 2011) (quoting *Davies*).

In any event, this Court need not decide whether Section 3583(e)(2) authorizes modification only for "changed circumstances" because this case involves changed circumstances that were not present at the time of Juda's sentencing. Specifically, since his case was reassigned to Judge Alsup in 2005, Juda has revealed that he is averse to supervision of any kind. In 2006, while he was still in prison, Juda sought to enjoin all probation officers from conducting any supervised release upon his completion of his prison term, and he asked the district court to issue the injunction because "there is a great likelihood of an altercation between Juda and an uninformed probation officer." SER 172, 178; *see also* SER 171. In 2010, less than two months into his term of supervised release, Juda informed his probation officer that supervised release was "an endless and petty hassle" that he could not tolerate, that "compliance is impossible," and that he would "put an end to this business." SER 5-6. Indeed, at the hearing on June 7, 2011, the district court agreed that Juda had initially been unwilling to abide by the court's rules upon his release from prison. SER 184. Although the district court also suggested that Juda's attitude towards supervised release had recently improved, SER 184, Juda quickly revealed that his resistance was ongoing, asking

29

the district court, "Can we just put an end to this?" and complaining that
supervised release was preventing him from traveling to Mexico to get his teeth
fixed.  SER 189.

Taken together, these events reveal Juda's unwillingness to submit to
supervision of any kind.  Under Section 3583(e)(2), a district court has authority to
modify or enlarge the conditions of supervised release after considering, among
other things, "the history and characteristics of the defendant."  18 U.S.C.
§ 3553(a)(1) (providing that a court, in determining the particular sentence to be
imposed, shall consider "the history and characteristics of the defendant"); *see also*
18 U.S.C. § 3583(e)(2) (authorizing court to modify or enlarge the conditions of
supervised release upon considering the factors set forth in 18 U.S.C.
§ 3553(a)(1)).  Juda's resistance to supervision is an element of Juda's "history and
characteristics" that was unknown to the sentencing court in 1993, and therefore it
amounts to "changed circumstances" for purposes of Section 3583(e)(2).

For all of these reasons, Section 3583(e)(2) authorized the district court to
impose new conditions of supervised release in this case.

### C. The district court properly exercised its discretion when it imposed new supervised release conditions.

There is also no merit to Juda's suggestion that the district court abused its
discretion when it formally added four conditions to Juda's supervised release.
Under Section 3583(e)(2), the district court was permitted to modify or enlarge the

conditions of Juda's supervised release "pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision," which include the provisions in 18 U.S.C. § 3583(d).  18 U.S.C. § 3583(e)(2); *see also* 18 U.S.C. § 3583(d).  According to Juda, the four additional conditions run afoul of 18 U.S.C. § 3583(d)(2) because they "constitute a greater deprivation of liberty than is reasonably necessary to achieve the goals of the Sentencing Reform Act."[12]  AOB 19.  However, the district court did not abuse its discretion in imposing these conditions.

As an initial matter, "the district courts have broad discretion to alter the conditions of a defendant's supervised release."  *Miller*, 205 F.3d at 1100.  Indeed, district courts have "'wide latitude' to impose supervised release conditions reasonably related to, *inter alia*, the nature and circumstances of the offense, the defendant's history and characteristics, and the sentencing goals of deterring future offenses, protecting the public, and rehabilitating the defendant."  *King*, 608 F.3d at 1130 (quoting *United States v. Weber*, 451 F.3d 552, 557 (9th Cir. 2006)).  Accordingly, this Court gives "considerable deference to a district court's decisions regarding supervised release because the district court has at its disposal

---

[12]  Juda does not dispute that the district court complied with the Federal Rules of Criminal Procedure, including Rule 32.1, and with other provisions applicable to the initial setting of the terms and conditions of post-release supervision, including the other requirements of 18 U.S.C. § 3583(d).  *See* AOB 16-19.

all of the evidence, as well as its own impression of the defendant, when making those decisions." *United States v. Kennedy*, 643 F.3d 1251, 1259 (9th Cir. 2011) (internal quotation marks and brackets omitted).

In this case, the district court acted within its discretion. All of the conditions it adopted have been either codified in the Sentencing Guidelines or upheld by this Court, based on Supreme Court precedent. *Compare* SER 68-69 (describing Juda's conditions), *with* U.S. Sentencing Guidelines Manual § 5D1.3(c)(2), (c)(6), (d)(1) (2011), *and United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007) ("After *Samson* [*v. California*, 547 U.S. 843 (2006)], there is no room for treating the search condition in this case as an abuse of discretion."). Juda does not explain how any of these conditions involves a greater deprivation of liberty than is reasonably necessary, nor does he suggest "any alternative, more limited" conditions that would accomplish the same goals. *United States v. Watson*, 582 F.3d 974, 984 (9th Cir. 2009). Accordingly, he has not carried his burden of showing that the district court abused its discretion in imposing these conditions. *See United States v. Blinkinsop*, 606 F.3d 1110, 1119 (9th Cir. 2010) ("Blinkinsop has the burden of showing that the special conditions that he appeals involve a greater deprivation of liberty than is reasonably required to achieve deterrence, public protection, and offender rehabilitation." (internal quotation marks and brackets omitted)).

32

## CONCLUSION

For the reasons set forth above, this Court should affirm both the district court's denial of Juda's purported motion to dismiss and the district court's modification of the conditions of Juda's supervised release.


Dated: August 1, 2012                    Respectfully submitted,

                                         BRIAN STRETCH
                                         Attorney for the United States,
                                         Acting Under Authority Conferred by 28
                                         U.S.C. § 515

                                         BARBARA J. VALLIERE
                                         Assistant United States Attorney
                                         Chief, Appellate Division

                                           s/  JENNY C. ELLICKSON
                                         JENNY C. ELLICKSON
                                         Trial Attorney
                                         U.S. Department of Justice

                                         Attorneys for Plaintiff-Appellee
                                         UNITED STATES OF AMERICA

33

## STATEMENT OF RELATED CASES

The following cases previously heard in this Circuit are related within the meaning of Ninth Circuit Rule 28-2.6 because they arose out of the same case in the district court and involve challenges by Juda and his co-defendants to the validity of their convictions and judgments:

*United States v. Juda et al.*, Nos. 93-10439, 93-10721, 93-10724, 93-10729, 93-10730

*United States v. Juda*, No. 96-10210

*United States v. Juda*, No. 97-16805

*United States v. Juda*, No. 01-10245

*Juda v. United States*, No. 01-70384

*Juda v. United States*, No. 05-70045

*United States v. Juda*, No. 06-15386

In addition, the following cases previously heard in this Circuit and other circuits are arguably related within the meaning of Ninth Circuit Rule 28-2.6 because they involve challenges by Juda to the conditions of his confinement, forfeiture proceedings, and the handling of his Freedom of Information Act requests, all of which relate to his conviction and sentence in this case:

*Juda v. Bureau of Prisons*, No. 94-5200 (D.C. Cir.)

*Juda v. Nerney*, No. 96-15905

*Juda v. Nerney*, No. 97-2192 (10th Cir.)

34

*Juda v. United States Customs Service*, No. 97-2326 (10th Cir.)

*Juda v. Nerney*, No. 99-2070 (10th Cir.)

*Juda v. Hamilton*, No. 99-2371 (10th Cir.)

*Juda v. United States Customs Service*, No. 99-5333 (D.C. Cir.)

*Juda v. Nerney*, No. 00-2437 (10th Cir.)

*Juda v. Andrews*, No. 02-15705

*United States v. Item 1: A 1990 Jeep Cherokee*, No. 04-2079 (10th Cir.)

All of these cases are all closed.

Date:  August 1, 2012                               s/  JENNY C. ELLICKSON
                                                Jenny C. Ellickson
                                                Trial Attorney
                                                U.S. Department of Justice

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because :

 X    the brief contains ___7,977_____ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); or

____    this brief uses a monospaced typeface and contains ____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. (32)(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

X    the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 program, with 14-font size Times New Roman style; or

____    the brief has been prepared in a monospaced spaced typeface using _____program with ____characters per inch and _____style.

Date:  August 1, 2012                        _s/  JENNY C. ELLICKSON
                                             Jenny C. Ellickson
                                             Trial Attorney
                                             U.S. Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2012, I electronically filed the Appellee's Brief in the case of *United States v. Olaf Peter Juda*, No. 11-10298, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

The Government's Supplemental Excerpts of Record in the same action were served on the party or parties listed below via First-Class Mail, postage prepaid, or have been dispatched to a third party commercial carrier for delivery within 3 calendar days.

Steven Francis Gruel, Esq.
Law Offices of Steven F. Gruel
315 Montgomery Street, 9th Fl.
San Francisco, CA 94104

       _/s/ Hui Chen_
Hui Chen
Legal Assistant

37

# ADDENDUM

## TABLE OF CONTENTS

18 U.S.C. § 3583…………………………………………………………………40

28 U.S.C. § 2255…………………………………………………………………45

United States Code Annotated Currentness
Title 18. Crimes and Criminal Procedure (Refs & Annos)
Part II. Criminal Procedure
Chapter 227. Sentences (Refs & Annos)
Subchapter D. Imprisonment (Refs & Annos)

## § 3583. Inclusion of a term of supervised release after imprisonment

**(a) In general.**--The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such a term is required by statute or if the defendant has been convicted for the first time of a domestic violence crime as defined in section 3561(b).

**(b) Authorized terms of supervised release.**--Except as otherwise provided, the authorized terms of supervised release are--

**(1)** for a Class A or Class B felony, not more than five years;

**(2)** for a Class C or Class D felony, not more than three years; and

**(3)** for a Class E felony, or for a misdemeanor (other than a petty offense), not more than one year.

**(c) Factors to be considered in including a term of supervised release.**--The court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

**(d) Conditions of supervised release.**--The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall order as an explicit condition of supervised release for a defendant convicted for the first time of a domestic violence crime as defined in section 3561(b) that the defendant attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic

40

Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of the legal residence of the defendant. The court shall order, as an explicit condition of supervised release for a person required to register under the Sex Offender Registration and Notification Act, that the person comply with the requirements of that Act. The court shall order, as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance. The condition stated in the preceding sentence may be ameliorated or suspended by the court as provided in section 3563(a)(4). The results of a drug test administered in accordance with the preceding subsection shall be subject to confirmation only if the results are positive, the defendant is subject to possible imprisonment for such failure, and either the defendant denies the accuracy of such test or there is some other reason to question the results of the test. A drug test confirmation shall be a urine drug test confirmed using gas chromatography/mass spectrometry techniques or such test as the Director of the Administrative Office of the United States Courts after consultation with the Secretary of Health and Human Services may determine to be of equivalent accuracy. The court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition--

**(1)** is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

**(2)** involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

**(3)** is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a

41

condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

**(e) Modification of conditions or revocation.**--The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)--

**(1)** terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice;

**(2)** extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision;

**(3)** revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more

than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or

**(4)** order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

**(f) Written statement of conditions.**--The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

**(g) Mandatory revocation for possession of controlled substance or firearm or for refusal to comply with drug testing.**--If the defendant--

**(1)** possesses a controlled substance in violation of the condition set forth in subsection (d);

**(2)** possesses a firearm, as such term is defined in section 921 of this title, in violation of Federal law, or otherwise violates a condition of supervised release prohibiting the defendant from possessing a firearm;

**(3)** refuses to comply with drug testing imposed as a condition of supervised release; or

**(4)** as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year;

the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

**(h) Supervised release following revocation.**--When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall

43

not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

**(i) Delayed revocation.**--The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

**(j) Supervised release terms for terrorism predicates.**--Notwithstanding subsection (b), the authorized term of supervised release for any offense listed in section 2332b(g)(5)(B) is any term of years or life.

**(k)** Notwithstanding subsection (b), the authorized term of supervised release for any offense under section 1201 involving a minor victim, and for any offense under section 1591, 2241, 2242, 2243, 2244, 2245, 2250, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, 2423, or 2425, is any term of years not less than 5, or life. If a defendant required to register under the Sex Offender Registration and Notification Act commits any criminal offense under chapter 109A, 110, or 117, or section 1201 or 1591, for which imprisonment for a term longer than 1 year can be imposed, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years.

44

United States Code Annotated Currentness
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part VI. Particular Proceedings
Chapter 153. Habeas Corpus (Refs & Annos)

## § 2255. Federal custody; remedies on motion attacking sentence

**(a)** A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

**(b)** Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

**(c)** A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

**(d)** An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

**(e)** An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

**(f)** A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

**(1)** the date on which the judgment of conviction becomes final;

**(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

**(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

**(g)** Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

**(h)** A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--

**(1)** newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

**(2)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

46